UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENNIS ALVA, | No. CV 08-01827-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in his

```
               analysis of the vocational issues and whether the testimony
               of the vocational expert is flawed;
          2.   Whether the ALJ's analysis of Plaintiff's testimony and
               subsequent rejection of that testimony is legally
               sufficient; and
          3.   Whether the ALJ gave appropriate weight to the opinions of
               Plaintiff's treating physicians and evaluated all of the
               medical evidence.
```
(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THERE IS NO ERROR AT STEP FIVE OF THE SEQUENTIAL EVALUATION**

At Step Five of the sequential evaluation process (see 20 C.F.R. §404.1520(a)), after it is determined at the preceding step that the claimant may not perform his or her past relevant work (see 20 C.F.R. §404.1520(f)), the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity ("RFC"), age, education, and work experience. If other specific work is identified, the individual is found to be not disabled.

In this case, the ALJ adopted the testimony of a vocational expert ("VE") at the hearing that, at Step Five, there were jobs in the national economy which were identified as being available to Plaintiff.

Plaintiff challenges the Step Five finding, and the Court has

discerned the following issues contained within this challenge:

1. That the jobs identified do not specifically allow Plaintiff the opportunity to "lie down during lunch breaks," which was included within the RFC as determined by the ALJ. (See AR at 19.) Essentially, Plaintiff appears to be asserting that because of an inability to lie down during lunch breaks, the identified jobs constitute a deviation from the descriptions contained in the Dictionary of Occupational Title ("DOT"), which deviation is not sufficiently explained in the testimony of the VE;

2. That the identified jobs are not appropriately classified as "light" exertional work based on the VE's testimony;

3. As to one of the jobs (information clerk) identified at Step Five, there is a deviation because this occupation assertedly requires "significant standing and/or walking" which exceeds the RFC as determined by the ALJ. (See AR at 19, JS at 5.)

**A.  Applicable Law.**

Under applicable regulations, the Commissioner takes administrative notice of reliable job information available from various governmental and other publications, which includes the DOT. (See 20 C.F.R. §404.1566(d)(1)); Massachi v. Astrue, 486 F.3d 1149, 1152, n.8 (9th Cir. 2007).)

The Ninth Circuit had occasion to extensively discuss the matter of job requirements which deviate from DOT descriptions, in the case of Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995). There, the VE identified occupations classified in the DOT as "light" work, which is

considered a more strenuous exertional category than "sedentary." Although the ALJ had determined that the claimant in that case was capable of only sedentary work (see 60 F.3d at 1431, n.1), the ALJ adopted the VE's identification of the two available jobs at Step Five, which had an RFC requiring the ability to perform light work. The appellate court rejected the argument that the claimant in that case was precluded from performing these jobs because she did not have the exertional RFC to perform light work, but only sedentary work. The Court held that its prior decision in Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990),

> "[S]upport[ed] the proposition that although the DOT raises a presumption as to the job classification, it is rebuttable. We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."

(Id. at 1435.)

Further, the appellate court noted that the DOT is not the only source of admissible information concerning jobs (Id. at 1435, citing Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994)), but that the Commissioner may take notice of reliable job information, including the services of a vocational expert. (Id., citing Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991).)

Finally, the Ninth Circuit cited with approval the opinion of a Sixth Circuit panel in Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995) for the proposition that,

> "The Sixth Circuit recently held in a case similar to

ours, that "the ALJ was within his rights to rely solely on the vocational expert's testimony. The Social Security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles." (Citing Conn, 51 F.3d at 610.)
(60 F.3d at 1435.)

**B.   Analysis**.

The ALJ adopted the VE's conclusion that Plaintiff could perform the following jobs:

1. Assembler, Small Products I (any industry), Code 706.684-022;
2. Information Clerk, Code 237.367-018; and
3. Cashier II (Clerical), Code 211.462-010.

(AR 21.)

Plaintiff complains that there is no basis for the conclusion that these jobs both require "light" exertion. But the simple and dispositive answer is that the DOT itself classifies each of these jobs as requiring light exertion. There is no deviation which would require specific or expert testimony.

Plaintiff also argues (see JS at 5) that the identified job of Information Clerk requires "significant standing and/or walking required of this job," which exceeds the ALJ's determination that Plaintiff is capable of standing and/or walking three to four hours out of eight in a workday. (See AR at 19.) But, again, this argument is easily controverted by reference to the DOT itself, in which the job description is fully described as follows:

> "Provides travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables."

Finally, the Court will address Plaintiff's assertion that these jobs are not available to him because, as the ALJ found, he must be afforded the opportunity to lie down during lunch breaks, and there is no indication in these job descriptions that this would be available to Plaintiff. The Court would note from its perusal of the many jobs set forth in the DOT that <u>none</u> of these jobs reference whether an individual would be permitted to lie down during a lunch break. The logical extension of Plaintiff's argument is that he is disabled because there cannot be a showing that he would be allowed to lie down during a lunch break in <u>any</u> job. In any event, it is a pertinent question to ask whether identification of these three jobs at Step Five constitutes a "deviation" from the job descriptions contained in the DOT. The Commissioner's answer in the JS is that the VE testified that Plaintiff could lie down in his car during lunch breaks, and the record demonstrates that Plaintiff does own a car. (JS at 6.) In Plaintiff's Reply to this argument, he argues that there was no specific evidence that he could actually lie down in his car, because there would be no indication as to where he could park it, and similar information. The Court determines that this is a <u>de</u> <u>minimis</u> argument.

6

As indicated, none of the job descriptions in the DOT address whether an individual can lie down during a lunch break. The VE was certainly testifying within his expertise when he asserted that Plaintiff would be able to lie down, if that were a limitation, and could still perform these jobs. The Court does not perceive that the necessity of lying down during a lunch break, for some unspecified amount of time, constitutes a deviation from a DOT job title which requires specific expert testimony.

For the foregoing reasons, the Court determines that there is no merit to Plaintiff's first issue.

## II

### THE ALJ DID NOT ERR IN DEPRECIATING PLAINTIFF'S CREDIBILITY

In his second issue, Plaintiff asserts that the ALJ erred in depreciating his credibility as to excess pain. Indeed, the ALJ concluded, generally, that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms "are not credible to the extent they are inconsistent with the [RFC] for the reasons explained below." (AR 20.)

**A.  Applicable Law**.

Subjective complaints of pain or other symptomology in excess of what an impairment would normally be expected to produce are subject to the credibility assessment of an ALJ. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). When determining credibility, the ALJ "may

not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also, Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). In order to find that a claimant's subjective complaints are not credible, an ALJ "must specifically make findings that support this conclusion," Bunnell, 947 F.2d at 345, and provide "clear and convincing reasons." Rollins, 261 F.3d at 857; see also Varney v. Secretary of Health & Human Services, 846 F.2d 581, 584 (9th Cir. 1988) (requiring the ALJ to put forward "specific reasons" for discrediting a claimant's subjective complaints).

The absence of objective evidence to corroborate a claimant's subjective complaints, however, does not by itself constitute a valid reason for rejecting her testimony. Tonapetyan v. Halter, 242 F.3d at 1147. However, weak objective support can undermine a claimant's subjective testimony of excess symptomology. See e.g., Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Implementing regulations prescribe factors which should be considered in determining credibility as to self-reported pain and other symptoms. In 20 C.F.R. §404.1529(c)(3), the factors to be considered are specified to include a claimant's daily activities ("ADL"); the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken; treatment received; and measures taken to relieve pain.

The regulations also specify that consideration should be given to inconsistencies or contradictions between a claimant's statements and the objective evidence:

>"We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."

(20 C.F.R. §404.1529(c)(4).)

**B.  Analysis.**

The ALJ relied upon the following factors in assessing Plaintiff's credibility with regard to excess pain complaints:

1. Contrasting the objective medical evidence with Plaintiff's claim;
2. The nature and extent of Plaintiff's activities of daily living ("ADL"); and
3. Plaintiff's own statements regarding the extent of his pain.

First, Plaintiff clearly testified at the hearing that he has learned to tolerate his back pain. (AR 41.)  Certainly, this is relevant in the credibility analysis, and while Plaintiff contends that the ALJ did not rely upon this factor, it is clear that the ALJ's determination specifically cited Plaintiff's own statements. (AR 20.)

The ALJ made extensive observations about the nature and extent

9

of Plaintiff's ADL. This is a legitimate and relevant factor in determining whether subjective pain complaints are to be accorded full credibility, according to regulations and case law. Indeed, Plaintiff does not seem to argue the relevance of this point, but instead focuses on Plaintiff's statement that he spends significant time sitting, stretched out, or that he sometimes naps during the day. (AR 20.) The ALJ acknowledged these claims as part of Plaintiff's subjective contentions; however, this does not depreciate the applicability of the ALJ's consideration of Plaintiff's ADL. (See AR at 39, 181, 278-280.) In essence, Plaintiff's assessment of his own exertional limitations is significantly more conservative than the exertional ability required for the ADL which Plaintiff conceded he is able to do.

The Court finds that the ALJ did not fall short of requirements under regulations and Social Security rulings (e.g., S.S.R. 96-7p, and 96-8p) in determining to depreciate Plaintiff's credibility. The reasons provided are supported by the record and are sufficient indicia to support a credibility finding. Consequently, Plaintiff's second issue has no merit.

**III**

**THE ALJ DID NOT ERR IN HIS EVALUATION OF THE OPINIONS**

**OF PLAINTIFF'S TREATING PHYSICIANS**

In Plaintiff's third issue, he asserts that the ALJ failed to give specific and legitimate reasons to reject the opinion of his treating orthopedist, Dr. Yegge, during a period of time in which Dr. Yegge found Plaintiff to be temporarily totally disabled. (JS at 12-13.)

10

1     Plaintiff asserts that, for example, the ALJ failed to consider
2  a December 1, 2004 opinion of Dr. Yegge in which it was opined that
3  Plaintiff was permanent and stationary. (JS at 12, citing AR 243.)  In
4  fact, that citation is to a September 19, 2007 report of Dr. Dasika.
5  Further, as the Commissioner notes (see JS at 14, n.3), as of November
6  2004, Dr. Wood took over treatment of Plaintiff from Dr. Yegge, at
7  Kaiser.  The report of November 11, 2004 indicates that Dr. Yegge is
8  no longer with the office. (AR 292.)  Nevertheless, it would appear
9  that Dr. Wood found Plaintiff to be temporarily totally disabled on
10 October 18, 2004. (AR 299.)
11    While Plaintiff complains that the ALJ failed to at all discuss
12 records from his treating physicians at Kaiser Permanente (see JS at
13 12), in fact, the ALJ noted that Dr. Crane of Kaiser rendered an
14 opinion in December 2003 that Plaintiff did not have any limiting
15 conditions, and that no further followup would be necessary. (AR 20,
16 414.)
17    An examination of Dr. Yegge's treatment notes from January 2004
18 indicated that Plaintiff was diagnosed with condromalacia. (AR 317-
19 327.)  But, Dr. Yegge also noted during his examination that Plaintiff
20 could perform a full squat, and his straight leg raising was negative.
21 (AR 322-325.)  The remainder of the examination in the lumbar spine
22 and knee areas was essentially normal. (AR 322-325.)  The ALJ so noted
23 in his decision. (AR 20.)  Clearly, the opinion of Dr. Wood that
24 during the time of this examination, Plaintiff was temporarily
25 disabled was controverted by the examinations and conclusions of Dr.
26 Yegge and Dr. Yogaratham. (AR 334-340.)  These conclusions were based
27 on independent examinations.
28    The ALJ also relied upon the testimony of the medical expert

("ME") (AR 31-36), whose conclusion was that Plaintiff was not disabled, based upon his examination of the medical records.  The ALJ was entitled to rely upon the non-examining ME, whose testimony was supported by other evidence in the record and was consistent with it.  See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

   Thus, the Court concludes that the ALJ properly weighed the somewhat conflicting medical evidence, concluded thereupon that Plaintiff was not disabled, and adopted an RFC which was reasonably supported by Plaintiff's examining and treating doctors.  For these reasons, even though the ALJ did not specifically mention Dr. Wood's statement about Plaintiff being disabled, he did in fact adequately consider all of the medical evidence in reaching his conclusion.  Any error which might lie in the failure to specifically discuss Dr. Wood is harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990).

   For the foregoing reasons, the Court finds no error with regard to Plaintiff's third issue.

   The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

   **IT IS SO ORDERED.**

DATED: September 15, 2009            /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE